**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEVIN BROWN,<br><br>Plaintiff,<br><br>v.<br><br>DEVELOPMENT SERVICES GROUP, INC., OLIVE STREET PARTNERS, LLC, TRIVERS ASSOCIATES, INC., and PARIC, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:25-cv-1284-MTS |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION**
**TO DEFENDANT TRIVERS ASSOCIATES, INC.'S MOTION TO DISMISS**

## INTRODUCTION

Kevin Brown ("Plaintiff") has filed an action against Trivers Associates, Inc. ("Trivers") and the other defendants for civil enforcement of the Fair Housing Amendment Act of 1988 ("FHAA"). Allegations in the Complaint focus on several hundred multi-family dwelling units at 1717 Olive Street in St. Louis (the "Multifamily Dwellings") located in an apartment building known as The Victor (the "Building").

The FHAA prohibits Trivers from discriminating against handicapped persons "in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988 [*i.e.*, March 13, 1991]." 42 U.S.C. § 3604(f)(3)(C).

The Complaint alleges that the Multifamily Dwellings were designed and constructed for first occupancy after June 2023, Plaintiff uses a wheelchair for mobility, and Trivers failed to design and construct the Dwelling Units in compliance with the FHAA's accessibility and usability requirements. Complaint [ECF 1] at ¶ 2, 6, 29, 40–43, 50.

Trivers now moves to dismiss the Complaint, arguing that Plaintiff's civil enforcement claim is not adequately pleaded. The company does not dispute Plaintiff's allegation that the Multifamily Dwellings were designed and constructed for first occupancy after June 2023. *See, e.g.,* Memorandum of Law [ECF 18] ("Memo.) at 5. Trivers argues instead that the Complaint should be dismissed because the plain language of § 3604(f)(3)(C), as well as HUD guidance on that provision, exempted Trivers from compliance.

Trivers seizes on the term "first occupancy" and concludes that Plaintiff's claim fails "as a matter of law" because the Act's design and construction requirements apply only to "buildings first occupied after March 13, 1991." *Id*, *see also* Motion for Judicial Notice [ECF 16] at 2 (judicial notice of public records sought showing Building constructed and used for commercial purposes prior to March 13, 1991).

Trivers does not support this conclusion with citation to case law but relies instead on the Department of Housing and Urban Development's ("HUD's") regulatory definition of first occupancy. *See* Memo. at 6 (quoting 24 CFR § 100.201, "[f]irst occupancy means a building that has never before been used for any purpose"). The FHAA is focused on stamping out handicap discrimination in the rental and sale of multifamily dwellings, and the Congressional regulatory scheme is plainly stated: Covered multifamily dwellings that are designed and constructed for first occupancy after March 13, 1991 must meet the design and construction requirements of § 3604(f)(3)(C)(I),(ii), and (iii).

Triverses' arguments and HUD's regulatory interpretations are contrary to the unambiguous language of the FHAA.

To provide builders and developers with "clear and helpful guidance" about ways to design and construct housing that complies with the Fair Housing Act, HUD published the Fair Housing Act Design Manual. U.S. Dept. of Hous. & Urban Dev., Fair Housing Act Design Manual: A Manual to Assist Designers and Builders in Meeting the Accessibility Requirements of the Fair Housing Act, Preface (rev.1998). The Design Manual, which Travers does not cite, states that "[a] building is not subject to the design requirements of the Fair Housing Act if: it was occupied on or before March 13, 1991, or the last building permit or renewal thereof was issued by a state, county, or local government on or before June 15, 1990." *Id*. at 12. The Design Manual further states that for a building to be considered "occupied," two conditions must be met: "1. a certificate of occupancy must have been issued, *and* 2. at least one dwelling unit actually must be occupied." *Id.* (emphasis supplied).

In sum, Plaintiff's FHAA claim is well–pleaded, the breadth of Triveres' interpretation and disturbance of "first occupancy" in the plainly stated statute alters the fundamental details of a Congressional regulatory scheme, and to the extent the FHAA does not offer conclusive guidance to its construction, neither Triver's interpretation nor HUD's interpretation is (or are) the best reading of the statute.

## <u>ARGUMENT</u>

Trivers moves to dismiss Plaintiff' Complaint on grounds it is not well–pleaded. To the contrary. For the reasons herein, as more fully discussed below, Triver's Motion to Dismiss should be denied and Plaintiff's FHAA claim should proceed.

### I. Legal Standard.

A complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient allegations of fact, that when taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). All factual allegations must be liberally construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp*., 514 F.3d 801, 806 (8th Cir. 2008).

**II. Plaintiff's FHAA Claim is Well–Pleaded.**

The Complaint alleged the existence of accessibility and usability barriers that precluded Plaintiff from full access and use of the Dwelling Units at the Victor. Plaintiff has plead that Trivers, as the architect of the project, failed to design and/or construct the Dwelling Units without barriers, that the Dwelling Units were designed and constructed for first occupancy after June 2023, and that the barriers violate the Fair Housing Act, Fair Housing Act Amendments, and applicable regulations.

These allegations are more than sufficient to constitute "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("At this stage the burden on the Plaintiff is low, and all factual allegations must be accepted as true.").

**III. Motion to Dismiss Presents Unique Question of Federal Housing Law.**

Even though sufficient bases exist to find Plaintiff's claim is well–pleaded, the instant motion presents a unique question: Do the design and accessibility requirements of the Fair Housing Act (FHA), 42 U.S.C. § 3604(f)(3)(C), apply to a commercial building that was originally constructed before the requirements' effective date, but converted into residential units after that date?

A dearth of precedent exists, and *Fair Housing Rights Center In Southeastern Pennsylvania v. Post Goldtex GP, LLC*, 823 F.3d 209 (3d Cir. 2016) is the only case that Plaintiff's research unearthed, on the issue. *Post Goldtex* is not controlling authority though. Moreover, in reaching their decisions, the district court and Third Circuit reviewed the validity of a regulation and relied on *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984), a case that was expressly overruled by *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2247 (2024).

HUD is charged with issuing rules effectuating the FHAA. 42 U.S.C. § 3614a. Relevant here, HUD has issued a Fair Housing Act Design Manual that states the definition of first occupancy is defined as "a building that has never before been used for any purpose." Design Manual at 12, *see also* 24 CFR § 100.201 (same).

The Court must ultimately decide the meaning of first occupancy under the FHA. *Arkansas v. US Dept. of Educ.*, 742 F.Supp.3d 919, 941 (E.D. Mo. 2024) (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244,2273-74, 219 L.Ed.2d 832 (2024)). "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper* at 2273 (cleaned up). If an agency's interpretation of its statutory authority "is not the one the court, after applying all relevant interpretive tools, concludes is best, it is not permissible." *Id*. at 2266 (cleaned up). "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 2244. Section 706 of the Administrative Procedures Act "makes clear that agency interpretations of statutes ... are not entitled to deference." *Id.*

Additionally, the Supreme Court has clarified that district courts are not bound by an agency's interpretation of a statute. *The McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, 606 U.S. 146, 155 (2025). "In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* at 155. In sum, HUD's interpretations do not bind district courts in civil enforcement proceedings of the Fair Housing Amendments Act.

The FHAA provides that housing discrimination includes "in connection with the design and construction of covered multifamily dwellings for first occupancy after [March 13, 1991]" a failure to design and construct those dwellings in accordance with accessibility and usability standards listed in the statute. § 3604(f)(3)(C). First occupancy is not defined in the FHAA, so the Court must interpret the words "consistent with their ordinary meaning . . . at the time Congress enacted the statute." *Wisc. Cent. Ltd. v. United States*, 585 U.S. 274, 284, 138 S.Ct. 2067, 201 L.Ed.2d 490 (2018). The FHAA's scope is determined by examining its "text in light of context, structure, and related statutory provisions." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).

Because the FHAA does not explicitly address the issue of first occupancy of a covered multifamily dwelling in an existing building, rules of statutory construction must be applied. *Bentley v. Arlee Home Fashions, Inc.*, 861 F.Supp. 65, 66 (8th Cir 1994). As the Eight Circuit noted in *Bentley*,

> Statutory construction requires the application of recognized rules. First, the starting point in every case involving construction of a statute is the language itself. Second,

> where a statute states what a term means then all other meanings not stated are excluded. Third, clear evidence of legislative intent prevails over other principles of statutory construction. Fourth, absent a very clear legislative intent, the plain meaning will prevail.

*Id*. (quoting *Johns–Manville Corp. v. U.S.*, 855 F.2d 1556 (Fed.Cir.1988).

Where a statute does not offer conclusive guidance as to its construction, "the legislative history may be examined to determine the intent of Congress." *Bentley* at 66 (citations omitted). Like the issue considered by the Eight Circuit in *Bentley,* the question presented here by all indications is one of first impression and thus "an analysis of all available information must be made." *Id*.

**A. Language of the Statute.**

Trivers argues that Plaintiff's claim fails as a matter of law because "the design and construction requirements of the FHAA" do not apply to the apartment complex since the Building – as opposed to the Dwelling Units – was designed and constructed for first occupancy in 1906 and well–before those requirements took effect. Memo. at 3.

The "law" that Trivers refers to is not the law of the Eighth Circuit, nor is it found in the text of the FHAA. And Trivers does not cite any authority from within the Eighth Circuit to support its position.

The law of the Eighth Circuit is the FHAA and the statute is straightforward. The design and construction requirements of the FHAA apply to multifamily dwellings designed and constructed for first occupancy after March 13, 1991.

The Complaint alleged precisely that and, as noted earlier, Trivers does not dispute that the Dwelling Units were designed, constructed, and first occupied after March 13, 1991. *Id*. at 5.

### B. The FHAA Evidences the Meaning of "First Occupancy."

Trivers correctly noted the FHAA does not define "first occupancy" used in § 3604(f)(3)(C). Instead of using the common and ordinary meanings of those words in context, however, Trivers separated "first" and "occupancy," recited independently their common and ordinary meanings, and concluded: "Thus, the plain meaning of the FHAA is that the design and construction requirements apply ***only to buildings*** that were designed and constructed for first time ***use or possession*** after March 13, 1991." Memo. at 6 (additional emphasis supplied).

Even when one accepts and applies the dictionary definitions supplied by Trivers, the term "first occupancy" refers to multifamily dwellings. And more importantly perhaps that term refers to covered multifamily dwellings designed and constructed for first occupancy after March 13, 1991.

Triverses' conclusion on the plain meaning of the FHAA states lacks merit because neither the definitions Trivers offered nor the language in the statute uses or refers to "buildings."

### C. Evidence of Legislative Intent

The FHAA (H.R. 1158) gained momentum and was passed into law during the 100th Congress (1987–1988). Actions - H.R.1158 - 100th Congress (1987-1988): Fair Housing Amendments Act of 1988, H.R.1158, 100th Cong. (1988) (https://www.congress.gov/bill/100th-congress/ house-bill/1158/all-actions). It was reported to the House by the Judiciary Committee (House Report 100-711) on June 17, 1988, and the House passed an amended version on June 29, 1988, by a vote of 376 to 23. *Id*. The Senate passed its version with an amendment on August 2, 1988, by a vote of 94 to 3. *Id*.

Differences were resolved, and the final bill was presented to the President on September 8, 1988, and President Reagan signed the bill into law on September 13, 1988. *Id*. The FHAA became effective on March 12, 1989. *Id*.

The sponsors and cosponsors included members of both Chambers. The Eighth Circuit has stressed that when considering legislative intent "[t]he fears and doubts of the opposition are no authoritative guide to the construction of legislation. It is the sponsors that we look to when the meaning of the statutory words is in doubt." *Bentley v. Arlee Home Fashions, Inc.*, 861 F.Supp. at 67 (citations omitted).

The House Report stated that the FHAA "places modest accessibility requirements on 'covered multifamily dwellings' designed and built for first occupancy 30 months after enactment. Covered multifamily dwellings are defined [ ] to mean buildings of 4 or more units with elevators, or ground floor units in other, non-elevator buildings. The Committee does not intend this bill to require the installation of elevators." House Report 100-711, H.R. Rep. No. 711, 100TH Cong., 2ND Sess. 1988, 1988 U.S.C.C.A.N. 2173, 2186, H.R. REP. 100-711 (Leg.Hist.) P.L. 100–430. The Committee reported that it intends to use a standard of "adaptable" design, one that "sets forth certain features of adaptive design to be incorporated in new multifamily housing construction." *Id*. at 2187.

Senator Tom Harkin, a cosponsor and chairman of the Handicapped Subcommittee of the Senate Judiciary Committee commented on design and construction of covered multifamily dwellings for "new construction" in the FHAA:

> Sen. Harkin: I would like to focus the remainder of my remarks on three provisions in the Fair Housing Amendments Act of 1988.

> * * * *
>
> The third provision I would like to comment on ensures the nondiscriminatory design and construction of covered multifamily dwellings for "new construction," that is, first occupancy after the date that is 30 months after the date of enactment of this act. The bill provides that discrimination includes the failure to design and construct such dwellings in such a manner that: First, the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons; Second, all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and Third, all premises within such dwellings contain the following features of adaptive design: an accessible route into and through the dwelling; light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; reinforcements in bathroom walls to allow later installation of grab bars; and usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space. These provisions are the result of lengthy negotiations between the disability community and architects, builders, and managers to achieve a reasonable balance between meeting the intent of the bill, to assure equal opportunity in housing for individuals with handicaps, while minimizing both construction costs and potential Issues of marketability. The cost of compliance with certain of these requirements is zero and minimal for other requirements.

Vol. 134, Pt. 14 Congressional Record 19720–21 (August 1, 1988).

Senator David Karnes, a cosponsor, explained how compromise had improved the FHAA

on construction of all covered multifamily new construction dwellings:

> Sen. Karnes: Let me mention another area where compromise has improved the legislation. As passed by the House, H.R. 1158 requires that all covered multifamily new construction dwellings be constructed so that all doors into and within the premises are wide enough for persons with wheelchairs and all public and common areas are readily accessible to and usable by the handicapped.
>
> Further, units in covered multifamily new construction must provide: First, an accessible route into and through the dwelling for handicapped persons; second, light switches and thermostats at an appropriate level; third, bathroom walls reinforced for later installation of grab bars at a tenant's expense; and fourth, kitchens and bathrooms in which a wheelchair can maneuver.

Vol. 134, Pt. 14 Congressional Record 19723 (August 1, 1988).

Senator Alan Simpson stood in support of the bipartisan substitute offered by Senators Ted Kennedy and Arlen Specter and cosponsored by a number of Senator Simpson's colleagues on both sides of the aisle. Senator Simpson emphasized the FHAA's expanded scope that encompasses multifamily new construction dwellings:

> Sen. Simpson: The Members of the Senate and the House themselves had worked tirelessly with each other in a spirit of compromise and achievement. Consequently, we are finally getting the job done. How great. I might illustrate my point by addressing Just one aspect of this substitute bill which is before us. I am speaking of the Issue of handicapped accessibility and protection for handicapped persons from housing discrimination. If we are to permit individuals with disabilities to realize their full potential and become Independent and self-sufficient, then we must expand

> the scope of the Fair Housing Act to encompass housing transactions. The House bill and this bipartisan substitute before us today require that certain multifamily new construction dwellings must be constructed in a fashion that persons with wheelchairs may be able to "access" their home and also assure that public and common areas must be readily accessible.

Vol. 134, Pt. 14 Congressional Record 19883-84 (August 2, 1988).

Senator Orin Hatch, a cosponsor, explained how the FHAA's reach would extend to include certain handicap building requirements for all new multifamily dwellings:

> Sen. Hatch: Another difference in this language from the original bill is the inclusion of certain handicap building requirements for all new multifamily dwellings.
>
> While the inclusion of this section is viewed by some as an extreme solution to the problems that handicapped individuals face, it Is within the realm of a bill that attempts to grant equal opportunity for all individuals to all available housing.
>
> Furthermore. it is not unanticipated that a broad provision will create some difficulty in initial compliance. It was therefore the sponsors' intention to create a transition period for the effective date of this section of the bill and the language provides that this section will not go into effect until 30 months after the enactment of the bill. This delay will allow architects and builders adequate time to finish building projects already under way and make design modifications that will be adequate in the future.

Vol. 134, Pt. 14 Congressional Record 19886 (August 2, 1988).

The legislative history of the FHAA discussed herein supports Plaintiff's position and a finding that "first occupancy" refers to the first occupancy of covered multifamily dwellings designed and constructed after March 13, 1991, and more specifically to the Multifamily Dwellings

at the Victor that Trivers designed and participated in constructing for first occupancy after June 2023.

**D. Plain Meaning of the Statute**

In the absence "a very clear legislative intent, the plain meaning" of the statute will prevail. *Bentley*, 861 F.Supp. at 66. The breadth of Triveres' interpretation and disturbance of "first occupancy" alters the fundamental details of a Congressional regulatory scheme, and neither Triverses' interpretation nor HUD's interpretation of the FHAA is the best reading of the statute.

The FHAA directs HUD to enforce the statute's design and construction requirements where covered multifamily dwellings are designed and constructed for first occupancy after March 13, 1991. Courts in the Eighth Circuit presume "that Congress 'does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.' " *Iowa v Wright,* 2025 WL 2554549, *10 (8th Cir., September 5, 2025) (quoting *Whitman v. American Trucking Ass'n*, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001)).

If Congress aimed to exclude the new construction of covered multifamily dwellings in existing buildings, "Congress easily could have drafted" the FHAA in that manner. *Id.* (citing *National Ass'n of Mfrs. v. Dep't of Defense*, 583 U.S. 109, 128, 138 S.Ct. 617, 199 L.Ed.2d 501 (2018)). HUD's reading of the FHAA is contrary to Congress's goal of expanding the Fair Housing Act, Title VIII of the Civil Rights Act of 1968.

It is "more than a little doubtful that Congress would have tucked into the mousehole of" § 3604(f)(3)(C) "an elephant that tramples the work done by" the Civil Rights Act of 1968 and expanded prohibition of housing discrimination Congress intended with the FHAA. *Iowa* at *11.

## **CONCLUSION**

Plaintiff's FHAA claim is sufficiently alleged and should proceed. To the extent, however, that this Court finds the claim deficient, Plaintiff requests leave to amend his Complaint.

Dated: November 17, 2025

Respectfully submitted,

**JONATHAN F. ANDRES, P.C.**

By: /s/ Jonathan F. Andres
Jonathan F. Andres #39531
1127 Hoot Owl Rd.
St. Louis, MO 63005
Telephone: (636) 633-1208
E-mail: andres@andreslawpc.com

*Attorney for Kevin Brown*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 17th day of November 2025, the foregoing was electronically filed with the Clerk of Court to be served thereby electronically upon all counsel of record.

/s/ Jonathan F. Andres