**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEVIN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:25-cv-01284 |
| v. | ) | |
| | ) | |
| DEVELOPMENT SERVICES GROUP, INC., OLIVE STREET PARTNERS, LLC, TRIVERS ASSOCITAES, INC., and PARIC LLC, | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT TRIVERS ASSOCIATES, INC.'S MOTION TO DISMISS**

## I. Introduction.

Plaintiff properly characterizes the dispositive question as follows: "Do the design and accessibility requirements of the Fair Housing Act (FHA), 42 U.S.C. § 3604(f)(3)(C), apply to a commercial building that was originally constructed before the requirements' effective date, but converted into residential units after that date?" [Doc. # 29 at p. 4.] The answer to that question is no, so plaintiff's FHAA claim fails as a matter of law.

## II. Law and argument.

Congress specifically delegated rule making authority to HUD when the FHAA was passed:

> The Secretary may make rules (including rules for the collection, maintenance, and analysis of appropriate data) to carry out this title. The Secretary shall give public notice and opportunity for comment with respect to all rules made under this section.

42 U.S.C.S. § 3614a; *see also Ojo v. Farmers Grp.*, 600 F.3d 1205, 1208 (9th Cir. 2010) ("Congress has charged the Department of Housing and Urban Development ("HUD") with the duty to make



IMANAGE\2796\0122\54394351.v1-11/26/25

rules to carry out the FHA"). Plaintiff admits as much, noting that "HUD is charged with issuing rules effectuating the FHAA". [Doc. #29, p. 5.]

Consistent with Congress' delegation, HUD promulgated various rules to carry out the FHAA. *See* 24 C.F.R. § 100.1. Among other things, HUD defined "first occupancy" to mean "a building that has never before been used **for any purpose**." 24 C.F.R. § 100.201 (emphasis added). HUD promulgated this rule following a notice and comment period in accordance with the Administrative Procedure Act. *See* 5 U.S.C.S. § 553. During this notice and comment period, HUD made clear that the FHAA does not apply to existing facilities that are converted to dwelling units. The relevant portion of the Federal Register is as follows:

> Conflict with Historic Preservation Design Codes Comment.
>
> Two commenters expressed concern about a possible conflict between the Act's accessibility requirements and local historic preservation codes (including compatible design requirements). **The commenters stated that their particular concerns are: (1) The conversion of warehouse and commercial space to dwelling units**; and (2) new housing construction on vacant lots in historically designated neighborhoods.
>
> Response. **Existing facilities that are converted to dwelling units are not subject to the Act's accessibility requirements.** Additionally, alteration, rehabilitation or repair of covered multifamily dwellings are not subject to the Act's accessibility requirements. The Act's accessibility requirements only apply to new construction. With respect to new construction in neighborhoods subject to historic codes, the Department believes that the Act's accessibility requirements should not conflict with, or preclude building designs compatible with historic preservation codes.

56 FR 9472 (emphasis added).

In sum, Congress expressly authorized HUD to implement rules to carry out the FHAA. Acting within that delegated authority, HUD made clear that (1) "first occupancy" means a building that has not previously been used for any purpose, and (2) the FHAA does not apply to existing facilities that are converted to dwelling units. Therefore, the FHAA's accessibility

requirements do not apply to The Victor because (1) it was used for commercial and industrial purposes long before the effective date of the FHAA, and (2) it is an existing facility that was converted to dwelling units.

Plaintiff encourages the Court to ignore HUD's rules because those rules (1) "are contrary to the unambiguous language of the FHAA" [Doc. # 29, p. 2], and (2) are not binding on the Court [Doc. # 29, p. 6]. Neither argument holds water.

First, HUD's rules are not contrary to the FHAA. The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997); *see also United States v. S.A.*, 129 F.3d 995, 998 (8th Cir. 1997) (holding that the starting point in interpreting a statute is always the language of the statute itself). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id*. at 341. HUD's rules are consistent with the plain meaning of the FHAA, to the extent there is one.

The statutory language at issue states as follows:

> For purposes of this subsection, discrimination includes—
>
> …
>
> (C) ***in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after the date of enactment of the Fair Housing Amendments Act of 1988 [enacted Sept. 13, 1988],*** a failure to design and construct those dwellings in such a manner that—
>
> > (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

> (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
>
> (iii) all premises within such dwellings contain the following features of adaptive design:
>
>> (I) an accessible route into and through the dwelling;
>>
>> (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
>>
>> (III) reinforcements in bathroom walls to allow later installation of grab bars; and
>>
>> (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C) (emphasis added).

The terms "construction" and "occupancy" are not defined, so the Court has to interpret those words using their ordinary, common meaning. *See United States v. Hansl*, 493 F.3d 850, 853 (8th Cir. 2006). "When words are left undefined, [courts] often consult standard reference works such as legal and general dictionaries in order to ascertain their ordinary meaning." *Fair Hous. Rights Ctr. v. Post Goldtex GP, LLC*, 823 F.3d 209, 214-15 (3d Cir. 2016) (holding that the FHAA's accessibility requirements do not apply to building conversions). Ballentine's Law Dictionary defines "occupancy" as:

> Possession in fact. The use of premises. 29A Am J Rev ed Ins § 895. The taking possession of those things which before belonged to nobody. 42 Am J1st Prop § 34. In reference to the rights of an occupying claimant: -- such an occupancy as under the rules of the common law would entitle one to acquire a title by adverse possession, that is actual, open, and peaceable occupancy, but not necessarily occupancy as of one's dwelling place.

BALLENTINE'S LAW DICTIONARY (3d ed. 1969). Similarly, Miriam-Webster defines "occupancy" as "the fact or condition of holding, possessing, or residing in or on something." http://merriam-webster.com/dictionary/occupancy. "Construction ... has been defined as the

creation of something new, as distinguished from the repair or improvement of something already existing." *Fair Hous. Rights Ctr*, *supra*, at 215. (internal quotations omitted).

Thus, the plain meaning of the FHAA is that the design and construction requirements apply only to new buildings that were created for first time use or possession after March 13, 1991 and not the repair or improvement of buildings that existed prior to that date. HUD's clarification that "first occupancy" means a building that has not previously been used for any purpose, and that the FHAA does not apply to existing facilities that are converted to dwelling units is wholly consistent with the plain meaning of the FHAA.

Plaintiff contends that the use of the phrase "multifamily dwellings" means that Congress intended to cover all multifamily dwellings built for first occupancy after the FHAA's effective date, regardless of when the buildings in which those dwellings exist were constructed. [Doc. # 29, pp. 7-8.] According to plaintiff, if a building was constructed and occupied prior to March 13, 1991 and then later renovated to include multifamily dwellings, FHAA's design and construction requirements apply. Essentially, plaintiff contends the FHAA's accessibility requirements apply to individual dwellings within a building, even if they do not apply to the building itself. Plaintiff's proposed interpretation is belied by other language in the statute. By way of example, the FHAA specifically regulates "common areas" of covered buildings, requiring that "the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons … ." The FHAA goes on to require that "all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs … ." Congress would not have included specific requirements for common areas if Congress intended only to regulate the design and construction of dwellings within a building. Indeed, Congress defined a dwelling in the FHAA as: "***<u>any building, structure, or</u>***

***portion thereof*** which is occupied as, or designed or intended for occupancy… ." 42 U.S.C.S. § 3602(b) (emphasis added).

Notably, plaintiff's most specific allegations in the complaint relate to the common areas of The Victor. Plaintiff alleges "Defendants have failed to design and/or construct public and common-use areas that are readily accessible to and usable by people with disabilities in compliance with 42 U.S.C. § 3604(f)(3)(C)(i) and 24 C.F.R. § 100.205(c)(1) (2008)" in several ways, including failing to provide accessible mailboxes in the "centralized mailbox center", failing to provide an accessible ice machine and coffee machine "in the tenant common area", and failing to provide an accessible intercom "at the entrance of the building." [Doc. # 1, ¶ 41.] If the Court were to interpret the FHAA as plaintiff suggests, focusing on the dwellings within The Victor and not the building itself, plaintiff would not be entitled to any relief with respect to the alleged deficiencies in the common areas of The Victor.

All of this demonstrates that the plain language of the FHAA requires certain accessibility standards in the design and creation of new buildings that contain multi-family dwellings for first occupancy after the FHAA's effective date in 1991. The Victor was designed and created for first occupancy long before the FHAA came into effect, so plaintiff's claims fail as a matter of law under the plain language of the FHAA.

The Court might also conclude that the FHAA is ambiguous, in which case the Court must look to the legislative history and administrative guidance to divine the meaning of the FHAA. A "statutory provision is ambiguous" if "it is susceptible to more than one reasonable interpretation." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011); *see also Fair Hous. Rights Ctr. v. Post Goldtex GP, LLC*, 823 F.3d 209, 214-15 (3d Cir. 2016). Congress' failure to define "construction" and "occupancy" creates significant ambiguity, as

demonstrated by the parties' differing opinions as to the applicability of the FHAA to building conversions. At least one other federal court has held that the FHAA is ambiguous. *See Fair Hous. Rights Ctr.*, 823 F.3d 209. Before holding that the FHAA does not apply to building conversions, the Third Circuit Court of Appeals held that the FHAA is ambiguous. According to the Third Circuit Court of Appeals:

> This particular provision states that the FHA's accessibility requirements apply to "the design and construction of covered multi-family dwellings for first occupancy after the date that is 30 months after September 13, 1988." Like the District Court, we cannot divine Congress' answer to the precise question at issue here by looking to the statute's plain language. That is, ***we cannot conclude that the statute, on its face, specifies that building conversions fall within the FHA's reach***. On the one hand, "design and construction of . . . dwellings" seems to indicate that the focus of the statute is on the construction of the dwelling itself, not the building the dwelling is housed in. An argument can be made, on the other hand, that we should read the phrase "construction of . . . dwellings for first occupancy" to mean that the statute only covers dwellings that are constructed for first occupancy as dwellings, that is, new construction, not conversions.
>
> ***The statute's failure to define two important terms—occupancy and construction—creates additional ambiguity***. When words are left undefined, we often consult "standard reference works such as legal and general dictionaries in order to ascertain" their ordinary meaning. Here, those definitions are not helpful. "Occupancy" is defined as the "taking possession of a property and the use of the same." No distinction is made in this definition between taking possession of residential or commercial property. Therefore, ***we cannot tell whether Congress intended to limit the accessibility requirements to residential occupancy or commercial occupancy, or both.*** The definition of the term "construction" is likewise unhelpful. That term has been defined as "the creation of something new, as distinguished from the repair or improvement of something already existing." This definition does nothing to answer the question whether the accessibility requirements apply to old, existing commercial buildings that were later converted for residential purposes. Instead, it further muddies the waters. That new creation could certainly be a brand new edifice, built from the ground up, but the same definition could also encompass an older commercial building that has been newly retrofitted for use as a residential apartment building. Therefore, ***because this provision is susceptible to more than one interpretation, it cannot reveal the clear intention of Congress to require buildings constructed before March 13, 1991, but remodeled after that date***, to comply with the accessibility requirements.

*Id.* at 214-15 (internal citations omitted).

If the Court decides the FHAA is ambiguous, the Court has to turn to the legislative history and relevant administrative guidance to divine the meaning of the FHAA. The legislative history and HUD's rules make it clear that the FHAA does not apply to building conversions like The Victor.

The legislative history demonstrates that Congress did not intend for the design and construction requirements of the FHAA to apply to building conversions. In Senate debates, Senator Tom Harkin, a co-sponsor of the FHAA and chairman of the Handicapped Subcommittee of the Senate Judiciary Committee, made clear that the FHAA applied only to "new construction":

> The administration, which had some reservations about the House bill, now fully supports the Kennedy-Specter substitute to the House bill because the substitute includes a new provision that addresses their concerns. The provision was the result of extensive negotiations between the administration and the disability and civil rights community.
>
> The new provision includes several important points.
>
> First, if a State or unit of general local government has incorporated into its laws ***<u>the requirements for new construction contained in the bill</u>***, compliance with such laws will be considered to satisfy the requirements in the bill.
>
> Second, regardless of whether or not a State or unit of general local government incorporates into its laws these requirements, such governmental unit may review and approve ***<u>newly constructed dwellings</u>*** for the purpose of making determinations of whether the design and construction requirements are being met.
>
> Third, the Secretary of HUD shall encourage, but may not require such governmental units to include in their existing procedures for the review and approval of ***<u>newly constructed covered multifamily dwellings</u>***, determinations as to whether the design and construction of such dwellings are consistent with the requirements for new construction in the bill, and must provide technical assistance to such governmental units and other persons to implement. the requirements applicable to new construction.
>
> Fourth, the bill reaffirms what the sponsors of the bill have been saying all along; namely, nothing in the act should be construed to require the Secretary to review or approve the plans, designs or construction of all covered multifamily dwellings to determine compliance with ***<u>the new construction requirements in the act</u>***.

Vol. 134, Pt. 14 Congressional Record 19720–21 (August 1, 1988) (emphasis added). Similarly, Senator Alan Simpson, another proponent of the FHAA, described the bill as follows:

> The House bill and this bipartisan substitute before us today require that ***certain multifamily new construction dwellings*** must be constructed in a fashion that persons with wheelchairs may be able to "access" their home and also assure that public and common areas must be readily accessible. Other specific requirements are included in the bill. I will not take time to enumerate them here.

Vol. 134, Pt. 14 Congressional Record 19720–21 (August 1, 1988) (emphasis added). Yet another supporter of the bill, Senator Howard Metzenbaum, rejected claims that the FHAA would grossly increase costs because the FHAA applies only to "new construction":

> Charges have also been made that ***requiring that new construction be adapted for the handicapped*** will increase the cost of housing and also result in the creation of a Federal building code. There will be some increase no doubt, but these small increases will be offset by the increase in the housing supply for not only handicapped persons but for the elderly who also often have mobility problems. To insure that there will be no Federal building code established, we have included provisions for State and local enforcement of ***the new construction provisions***, The provision for State and local enforcement will allow local government to continue its traditional role of ***supervising the construction of new buildings***.

Vol. 134, Pt. 14 Congressional Record 19720–21 (August 1, 1988) (emphasis added).

During legislative debate regarding the FHAA, the phrases "new construction" or "newly constructed" were referenced sixteen (16) separate times, while there was not a single reference to "remodel", "retrofit", "existing building", or "existing structure". This demonstrates that the Legislature did not even consider that the FHAA's design and construction requirements would apply to pre-existing buildings. Consistent with this legislative intent, Senator Kent Contrad, another proponent of the bill, stated:

> In order to insure that handicapped persons can access housing units, this bill requires that ***all newly constructed*** multifamily units built be accessible and adaptable for handicapped persons. Doors and hallways must be wide enough for wheelchairs; switches and other controls must be accessible. Also, disabled persons should be easily able to make alterations.

> I know some have been concerned that this bill will require property owners to make extensive and expensive renovations to their units. The costs should not be prohibitive, however, since ***owners and renters are not required to renovate existing units***, nor are they required to install expensive elevators.

Vol. 134, Pt. 14 Congressional Record 19720–21 (August 1, 1988) (emphasis added).

Thus, the legislative history demonstrates that Congress did not intend for the design and construction requirements of the FHAA to apply to the renovation of existing buildings. Consistent with the Legislature's intent, HUD made clear that the FHAA's accessibility requirements apply only to buildings that had never before been used for any purpose, and not existing facilities that are converted to dwelling units.

For all of these reasons, HUD's rules are consistent with the FHAA.

Plaintiff's contention that HUD's rules are not binding on the Court, while true, does not save plaintiff's FHAA claim, because the Court should at the very least be persuaded by HUD's clear pronouncement that the FHAA does not apply to existing buildings that are converted to dwelling units. "When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395, 144 S. Ct. 2244, 2263 (2024). "***The court fulfills that role by recognizing constitutional delegations***, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Id*. (internal citations and modifications omitted) (emphasis added). Indeed, "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation… ." *Id*. at 413.

Plaintiff contends *Loper Bright* gives the Court reason to ignore HUD's clear guidance. That is not the case. The Supreme Court in *Loper Bright* restated the import of longstanding, contemporaneous agency interpretations in determining the meaning of a statute:

> The APA, in short, incorporates the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions. ***In exercising such judgment, though, courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes***. Such interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance" consistent with the APA. ***And interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning.***

*Loper*, *supra*, at 394 (internal quotations and citation omitted) (emphasis added) (quoting *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161, 89 L.Ed. 124). Indeed, the Supreme Court long ago held that "the rulings, interpretations and opinions of [administrative agencies], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140. According to the Supreme Court, such administrative pronouncements might even be persuasive, depending on the "thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade … ." *Skidmore*, 323 U.S. at 140; *see also Loper*, *supra*, at 394; *Zimmer Radio of Mid-Missouri, Inc. v. FCC*, 145 F.4th 828, 845 (8th Cir. 2025) ("While consistency of position is not dispositive, an agency's statutory interpretation that is consistent with earlier and later pronouncements' has power to persuade.") (internal quotations and modifications omitted).

HUD's interpretations of the FHAA are particularly persuasive because those interpretations were made not long after the FHAA was enacted, and those interpretations have never changed. HUD's regulation defining "first occupancy" was promulgated on January 23,

1989 – only one hundred thirty-two (132) days after the FHAA was enacted. HUD's pronouncement that "[e]xisting facilities that are converted to dwelling units are not subject to the [FHAA's] accessibility requirements" was included in HUD's guidelines codified in the 1991 edition of the Code of Federal Regulations. *See* 56 F.R. 9472. Moreover, HUD has never changed its definition of "first occupancy" or waivered with respect to its position that the FHAA's accessibility requirements do not apply to existing facilities that are converted to dwelling units. For these reasons, the Court should be persuaded by HUD's interpretation of the FHAA and hold that the FHAA's accessibility requirements do not apply to The Victor.

**III. Conclusion.**

The language of the FHAA, the legislative history, and HUD's rules make clear that the FHAA's design and construction requirements do not apply to buildings that existed prior to 1991 and were later converted to dwellings. There is no dispute that The Victor existed and was used before the FHAA's accessibility requirements took effect in 1991. Accordingly, plaintiff's FHAA claim fails as a matter of law, plaintiff's complaint should be dismissed without leave to amend.

Respectfully submitted,

GOLDBERG SEGALLA, LLP

By: /s/ Joseph Dankert

John M. Allen, #49642MO
Joseph Dankert, #73329MO
8000 Maryland Ave., Ste. 640
St. Louis, MO 63105
P: 314-446-3370 (JMA)
314-446-3375 (JD)
F: 314-446-3360
E: jallen@goldbergsegalla.com
jdankert@goldbergsegalla.com

*Attorneys for Defendant Trivers Associates, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served through the Court's eFiling system and/or by facsimile, hand delivery, electronic mail, or U.S. Mail, postage prepaid, this 26th day of November, 2025 to all counsel of record.

/s/ Joseph Dankert